U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**
JUL - 9 2019
CLERK, U.S. DISTRICT COURT
By_____
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JASON KYLE GEE, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | No. 4:18-CV-469-A |
| | § | |
| LORIE DAVIS, Director, | § | |
| Texas Department of Criminal | § | |
| Justice, Correctional | § | |
| Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM OPINION
### and
### ORDER

This is a petition for a writ of habeas corpus pursuant to
28 U.S.C. § 2254 filed by petitioner, Jason Kyle Gee, a state
prisoner confined in the Correctional Institutions Division of
the Texas Department of Criminal Justice, against Lorie Davis,
director of that division, respondent. After having considered
the pleadings, state court records, and relief sought by
petitioner, the court has concluded that the petition should be
denied.

### I. FACTUAL AND PROCEDURAL HISTORY

A jury in Wise County, Texas, Case No. CR18318, found
petitioner guilty of aggravated assault with a deadly weapon and
assessed his punishment at 75 years' imprisonment and a $10,000
fine. (Clerk's R. 21.) Petitioner's conviction was affirmed on
appeal and the Texas Court of Criminal Appeals refused his
petition for discretionary review. (Electronic R. 1.) Petitioner

did not seek writ of certiorari or post-conviction state habeas relief. (Pet. 3-4.)

The appellate court summarized the evidence at trial as follows:

> One day in March 2015, [petitioner] and Jeseca Drury, who were dating each other, visited the house of Bryon Nabors and Michelle Combs. Drury wanted to trade two power tools for illegal drugs, and Nabors called Skinner to facilitate the trade. Skinner arrived at the house. According to Nabors, [petitioner] gave Skinner the power tools, and Skinner gave [petitioner] methamphetamine.

> According to Combs, after Skinner left, [petitioner] became upset. [Petitioner] believed that Skinner had "shorted" Drury on the agreed-upon amount of methamphetamine. Skinner had agreed to deliver one gram of methamphetamine but had given Drury only about half a gram. Nabors attempted to contact Skinner again but was not able to immediately reach him. Nabors observed that [petitioner] "storm[ed] around" and "kept talking about" the fact that Skinner had not delivered the promised amount of drugs.

> Later that night, [petitioner], Drury, Nabors, and Combs—all of whom had been using methamphetamine that day—traveled together in Nabors's truck and spotted Skinner and Jessica Puckett (Skinner's girlfriend), who were riding together in Puckett's car. Both vehicles pulled over. Nabors got out of his truck and approached Skinner. They spoke for a couple of minutes. According to Nabors, Skinner conveyed that he would eventually deliver more methamphetamine.

> When Nabors got back into the truck, he attempted to reassure [petitioner] that Skinner was "going to take care of the situation." Drury testified that Nabors told [petitioner] that Skinner did not "have anything" at that time and that [petitioner] could "check back with him in a couple of hours." But [petitioner] became angrier, jumped out of the truck, moved toward Puckett's car with a knife in his hand, yelled in that direction, and attempted to slash or stab a tire with the knife as Skinner began to drive

2

away. Skinner testified, "[petitioner] went to make a stabbing motion toward me or the car or something, and I mashed on the accelerator." According to Drury, when [petitioner] returned to the truck, he said, "I cannot believe I stabbed [Puckett's] tire."

Skinner saw [petitioner]'s attempt to slash the tire and became angry. Knowing that [petitioner] had a knife, he circled back toward Nabors's truck, stopped the car, got out of it, and approached [petitioner], who had returned to the truck. Skinner said to [petitioner], "You just fucked up, boy." Nabors heard Skinner's words and believed that Skinner was going to "whip [petitioner's] ass."

[Petitioner] and Skinner began to fight. During the fight, [petitioner] used the knife to slash Skinner's throat. The sequence of when [petitioner] did so is in dispute. According to Skinner, when he approached [petitioner], [petitioner] slashed his throat, and Skinner then began to hit [petitioner] with a car door in attempt to hurt him and knock him off balance. Skinner testified, "[A]fter I felt the impact is when I started slamming the door." According to Drury and [petitioner], however, Skinner slammed [petitioner] with the door before [petitioner] slashed Skinner's neck.

Puckett moved Skinner back toward her car, and according to Puckett, [petitioner] "came at [her] with the knife." After Puckett helped Skinner get in the car, while he was severely bleeding in the front passenger's seat and trying to hold pressure against his neck with a shirt, she drove toward a hospital and called 9-1-1.

At the same time, [petitioner] jumped into Nabors's truck and told Nabors to "get him out of [there]." He shouted at Nabors and Combs, telling them not to say anything to anyone about what had occurred. According to Nabors, [petitioner] said that Nabors and Combs "better not say a damn thing or [he would] kill [them] both." Nabors eventually pulled over, and [petitioner] and Drury got out of the truck. They hid near a bush and called [petitioner]'s mother. [Petitioner] threw the knife away. Nabors and Combs returned home.

Puckett and Skinner eventually arrived at a hospital. Skinner had emergency surgery to treat a lacerated jugular vein and an exposed trachea. In one of Skinner's pockets, the police found a small folding pocketknife; the police did not recover any other weapons from Skinner, from the car he had been in, or from the scene of the crime. The police discovered Skinner's fingerprint and his blood on a door of Nabors's truck. A police officer spoke with [petitioner] after arresting him. [Petitioner] did not deny slashing Skinner's throat or claim that Skinner had used a weapon during the incident, but he stated that he had feared for his life and that he was trying to get away before Skinner attacked him.

A grand jury indicted [petitioner] for aggravated assault; the indictment alleged that the knife he had used qualified as a deadly weapon. [Petitioner] received appointed counsel, chose the jury to assess his punishment in the event of his conviction, and pled not guilty. At trial, he testified that when he approached Puckett's car, a window was down, and he asked Skinner "if he was going to make it right." According to [petitioner], at that point, Skinner became angry, reached under his seat "for something," and attempted to open his door. [Petitioner] initially did not let him. Skinner told [petitioner] to "[s]tep back from [his] fucking door," and [petitioner] then did so. Skinner got out of the car, but Puckett began yelling at him, and he got back into the car and began to drive away. At that point, [petitioner] punched one of Puckett's tires with one hand while holding the knife with his other hand. He had pulled his knife out because he had thought that Skinner had "pulled something from underneath his seat."

According to [petitioner], he was "really scared" when Skinner circled Puckett's car back toward him, got out of the car, and approached him. [Petitioner] testified that he "thought [Skinner] had pulled" a weapon. He testified that Skinner opened the door of the truck and repeatedly slammed it against him. According to [petitioner], because he had "nowhere to go," thought Skinner had a weapon (although not knowing whether Skinner did), and feared for his life, he slit Skinner's throat.

[Petitioner] testified that he thought that

4

Skinner had a weapon because he "got in his car and came back." But [petitioner] admitted that he never saw Skinner with a weapon. [Petitioner] also admitted that he had displayed a deadly weapon (the knife) in an aggressive manner to Skinner before Skinner drove away and then circled back toward him. [Petitioner] denied that he had threatened Puckett with the knife after slashing Skinner's throat.

The trial court's charge to the jury on the issue of [petitioner]'s guilt contained language related to the law of self-defense and instructed the jury as follows:

[I]f you believe from the evidence beyond a reasonable doubt . . . that [petitioner] did . . . intentionally, knowingly[,] or recklessly cause bodily injury to Clifton Skinner by cutting Clifton Skinner with a knife, and [petitioner] did then and there use or exhibit a deadly weapon . . . during the commission of said assault, then you will find [petitioner] guilty[,] . . . but [if] you further find from the evidence, or you have a reasonable doubt thereof, that . . . [petitioner] reasonably believed that from the words or conduct, or both, of Clifton Skinner, it reasonably appeared to [petitioner], as viewed from his standpoint, that his life or person was in danger and there was created in his mind a reasonable expectation or fear of death or serious bodily injury from the use of unlawful deadly force by Clifton Skinner, and that acting under such apprehension and reasonably believing that the use of deadly force on his part was immediately necessary to protect himself against Clifton Skinner's use or attempted use of unlawful deadly force, he cut Clifton Skinner, then you will find [petitioner] not guilty . . . .

. . . .

If you find from the evidence beyond a reasonable doubt that . . . [petitioner] did not reasonably believe that he was in danger

5

> of death or serious bodily injury, or that
> [petitioner] . . . did not reasonably believe
> that the degree of force actually used by him
> was immediately necessary to protect himself
> against Clifton Skinner's use or attempted
> use of unlawful deadly force, then you should
> find against [petitioner] on the issue of
> self-defense.

> After receiving the parties' evidence and
> arguments on the issue of petitioner's guilt, the jury
> deliberated for less than an hour and found him guilty.
> . . .

(Mem. Op. 2-7 (footnote omitted).)

## II. ISSUES

In one ground for relief, petitioner claims that the evidence is insufficient and does not support a conviction for aggravated assault with a deadly weapon. (Pet. 6.)

## III. RULE 5 STATEMENT

Respondent believes that petitioner has exhausted his state-court remedies as to the claims raised and that his petition is neither barred by limitations nor subject to the successive-petition bar. as required by 28 U.S.C. §§ 2244(b), (d), 2254(b). (Resp't's Ans. 8.)

## IV. DISCUSSION

### A. Legal Standard for Granting Habeas Corpus Relief

A § 2254 habeas petition is governed by the heightened standard of review provided for in the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state

court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as established by the United States Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. 28 U.S.C. § 2254(d)(1)-(2); *Harrington v. Richter,* 562 U.S. 86, 100 (2011). This standard is difficult to meet and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Richter*, 562 U.S. at 102.

The statute further requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson,* 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The petitioner has the burden of rebutting this presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Additionally, the Texas Court of Criminal Appeals, the state's highest criminal court, denied discretionary review without written opinion or order. Under these circumstances, a federal court "should 'look through' the unexplained decision to the last related state-court decision providing" particular reasons, both legal and factual, "presume that the unexplained decision adopted the same reasoning," and give appropriate deference to that decision. *Wilson v. Sellers,* --- U.S. ---, 138

S. Ct. 1188, 1191-92 (2018). Petitioner raised his sufficiency-of-the-evidence claim on direct appeal, but the Texas Court of Criminal Appeals refused discretionary review without written order or opinion. Thus, this court will look through to the state appellate court's opinion, the last reasoned state-court decision regarding the claim, in addressing petitioner's ground for relief.

### B. Sufficiency of the Evidence

Petitioner claims that he is entitled to federal habeas relief "as the evidence entered at his trial was insufficient to support his conviction as it did not disprove or controvert his claim that he acted in justifiable self-defense." (Pet. 6.) He asserts that "the state court's decision denying his claim is an unreasonable application of U.S. Supreme Court precedent because the jury's verdict rested on mere speculation that [his] use of deadly force was not reasonable." (Id.) He urges that "[i]t is undisputed that [his] actions were reasonably justified under the apparent danger that Mr. Skinner was pursuing [him] intending to inflict serious harm and even had him trapped in the truck with no avenue of escape." (Id.)

A criminal defendant has a federal due process right to be convicted only upon evidence that is sufficient to prove beyond a reasonable doubt the existence of every element of the offense. *Foy v. Donnelly,* 959 F.2d 1307, 1313 (5th Cir. 1992). Federal

courts, nevertheless, have extremely limited habeas review of claims based on the sufficiency of the evidence. When reviewing such claims, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319 (1979). When faced with a record of historical facts that supports conflicting inferences federal courts must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution. *Id.* at 326. Where a state appellate court has conducted a thoughtful review of the evidence, its determination is entitled to great deference. *Callins v. Collins,* 998 F.2d 269, 276 (5th Cir. 1993).

Applying the *Jackson* standard, and relevant state law, the state appellate court addressed petitioner's claim as follows:

> [Petitioner] contends that the evidence does not support his conviction. Specifically, he argues that the evidence is not sufficient to support the jury's implicit rejection of his claim that he acted in justifiable self-defense.

> In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

to draw reasonable inferences from basic facts to ultimate facts.

The trier of fact is the sole judge of the weight and credibility of the evidence. Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution.

A person commits aggravated assault with a deadly weapon if he intentionally, knowingly, or recklessly causes bodily injury to another and uses or exhibits a deadly weapon—here, a knife—during the commission of the assault.

However, section 9.31(a) of the penal code provides that "a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." Similarly, section 9.32(a) provides that a "person is justified in using deadly force against another" if the person is justified in using force under section 9.31 and the person "reasonably believes the deadly force is immediately necessary" to protect himself "against the other's use or attempted use of unlawful deadly force." An actor's belief that the use of deadly force is immediately necessary is presumed to be reasonable when the actor

> (1) knew or had reason to believe that the person against whom the deadly force was used:
>> (A) unlawfully and with force entered, or was attempting to enter unlawfully and with force, the actor's occupied habitation, vehicle, or place of business or employment;
>> (B) unlawfully and with force removed, or was attempting to remove unlawfully and with force, the actor from the actor's habitation, vehicle, or place of business or employment; or
>> (C) was committing or attempting to

commit an offense described by
Subsection (a)(2)(B);
  (2) did not provoke the person against
whom the force was used; and
  (3) was not otherwise engaged in
criminal activity, other than a Class C
misdemeanor that is a violation of a law or
ordinance regulating traffic at the time the
force was used.

A defendant has the burden of producing some
evidence to support a claim of self-defense. After the
defendant has introduced some evidence of a defense,
the State bears the burden of persuasion to disprove
it. This burden does not require the State to produce
evidence disproving the defense; it requires only that
the State prove its case beyond a reasonable doubt. To
determine the sufficiency of the evidence involving a
self-defense claim, we ask whether, after viewing all
the evidence in the light most favorable to the
prosecution, any rational trier of fact could have
found the essential elements of the charged offense
beyond a reasonable doubt and also could have found
against the [petitioner] on the self-defense issue
beyond a reasonable doubt. A guilty verdict is an
implicit finding rejecting self-defense.

The statements of the defendant and his witnesses
do not conclusively prove a claim of self-defense.
Rather, one product of the jury's exclusive role of
assessing witnesses' credibility is that the jury "is
free to believe or disbelieve the testimony of any
witness, to reconcile conflicts in the testimony, and
to accept or reject any or all of the evidence of
either side."

On appeal, [petitioner] predicates a large part of
his argument on an assertion that under [Texas Penal
Code] section 9.32(b), he was entitled to the
presumption that he reasonably believed that deadly
force was immediately necessary. He contends that he
was entitled to the presumption because at the time he
slashed Skinner's neck, Skinner was "either attempting
to enter the truck to get [him] or extract [him] from"
the truck and because he did not provoke the
altercation.

Even assuming that the evidence proves those

requirements for applying the presumption, we cannot agree that [petitioner] is entitled to the presumption because viewing the evidence in the light most favorable to the verdict, the jury could have rationally found that when [petitioner] slashed Skinner's throat, he was engaged in criminal activity. Specifically, the evidence, including [petitioner]'s own testimony, showed that he was high on methamphetamine, an illegal drug, when the altercation with Skinner occurred and that the origin of the dispute concerned [petitioner]'s attempt to obtain more methamphetamine. [Petitioner] testified that hours before the altercation, he sent a message to Puckett on Facebook to see whether Skinner was going to "make it right," meaning deliver more methamphetamine. And just before the altercation, [petitioner] got out of Nabors's truck and approached Skinner "to see if he was going to make it right." [Petitioner] testified, "I just asked him . . . if he was going to make it right. If not, if maybe he could . . . give some money back instead of drugs."

Because [petitioner]'s dispute with Skinner that led to the slashing of Skinner's throat focused on [petitioner]'s attempt to obtain methamphetamine, the jury could have rationally found that he was engaged in criminal activity and was not entitled to the statutory presumption.

With no need to apply the statutory presumption, the jury could have rationally rejected [petitioner]'s self-defense claim by finding that he could not have reasonably believed that deadly force was immediately necessary to prevent Skinner's use or attempted use of deadly force. Combs testified that she never saw Skinner brandish any weapons and never heard Skinner threaten deadly force. When the State asked Combs whether Skinner appeared to be trying to kill [petitioner], she replied, "All I seen was them two fighting." Combs explained that when [petitioner] got back into Nabors's truck after attacking Skinner, he did not say that Skinner had tried to kill him.

Nabors testified that Skinner never displayed any weapon and did not do anything toward [petitioner] that threatened deadly force. Puckett testified that she never saw Skinner with a gun on the night that [petitioner] slashed his throat and that while Skinner

had a pocket knife, he never took it out of his pocket. Puckett also opined that [petitioner] provoked the altercation by attempting to stab her tire. She stated that she never saw Skinner use or threaten deadly force against [petitioner].

Skinner testified that he never threatened to kill [petitioner] and that he never used his knife. He also testified that he never pretended to have a gun, did not have a gun, and never threatened or used deadly force against [petitioner]. Finally, he testified that he did not slam [petitioner] with the door of Nabors's truck until [petitioner] had already cut his throat.

Drury testified that she never saw Skinner possess a weapon on the night [petitioner] slashed his throat. She admitted that Skinner never threatened deadly force against [petitioner] that night.

Based on all of the evidence summarized above and the remaining evidence in the record, and even considering [petitioner]'s testimony that Skinner had slammed him with the door before he slashed Skinner's neck and that he subjectively feared for his life, the jury could have rationally found that Skinner's words and acts could not have produced any reasonable belief by [petitioner] of an immediate threat of unlawful deadly force against him. Viewing the evidence in the light most favorable to the verdict and deferring to the jury's role to draw inferences from the evidence and resolve conflicts from it, we conclude that the jury could have rationally found the essential elements of aggravated assault beyond a reasonable doubt and also could have found against [petitioner] on self-defense beyond a reasonable doubt.

(Mem. Op. 7-15.)

Petitioner claims that the evidence was insufficient to support his conviction "as it did not disprove or controvert his claim that he acted in justifiable self-defense." (Pet. 6.) According to petitioner, the state court's determination is an unreasonable application of *Jackson* "because the jury's verdict

13

rested on mere speculation that [his] use of deadly force was not reasonable." (Id.) He urges that it is "undisputed that [his] actions were reasonably justified under the apparent danger that Mr. Skinner was pursuing [him], intending to inflict serious harm and even had him trapped in the truck with no avenue to escape." (Id.)

Where, as here, a petitioner's sufficiency-of-the-evidence claim is based on arguments concerning witness credibility, a federal habeas court generally will not grant relief. *See Schlup v. Delo,* 513 U.S. 298, 330 (1995) ("[U]nder *Jackson,* the assessment of the credibility of witnesses is generally beyond the scope of review."); *Ramirez v. Dretke,* 398 F.3d 691, 695 (5th Cir. 2005) (providing "[a]ll credibility choices and conflicting inferences are to be resolved in favor of the verdict"). There is no basis for varying from that general rule in the instant case.

The jury had broad discretion, as trier of fact, to "resolve conflicts in the testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Green v. Johnson,* 160 F.3d 1029, 1047 (5th Cir. 1998) (quoting *Jackson,* 443 U.S. at 319). Given the history of that evening, the state court's conclusion that the jury could have reasonably found that petitioner was engaged in criminal activity, regardless of whether the drug transaction was between petitioner and Skinner or Drury and Skinner, was not objectively unreasonable.

Nevertheless, such a finding did not disqualify petitioner from defending his use of force; it merely removed the presumption that his use of force was reasonable. *See* TEX. PENAL CODE § 9.31(a)(3) (West 2011); *Barrios v. State,* 389 S.W.3d 382, 393 (Tex. Crim. App. 2011).

Whether petitioner reasonably believed the use of deadly force was immediately necessary under the circumstances was also an issue of fact for the jury. *Saxton v. State,* 804 S.W.2d 910, 913-14 (Tex. Crim. App. 1991). The jury obviously concluded that petitioner's version of events lacked credibility and did not reasonably believe that he feared for his life or that deadly force was necessary to defend himself under the circumstances. This court may not substitute its own views on the credibility of witnesses for those of the jury. *See United States v. Anderson,* 559 F.3d 348, 353 (5th Cir. 2009).

In summary, having independently reviewed the record, this court finds nothing unreasonable in the state court's application of *Jackson.* Accordingly, petitioner's claim does not warrant federal habeas relief.

For the reasons discussed herein,

The court ORDERS the petition of petitioner for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, denied. Pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, Rule 11(a) of the Rules Governing Section 2254 Cases

in the United States District Court, and 28 U.S.C. § 2253©), for the reasons discussed herein, the court further ORDERS that a certificate of appealability be, and is hereby, denied, as petitioner has not made a substantial showing of the denial of a constitutional right.

SIGNED July ___9___, 2019.

_____
JOHN MCBRYDE
UNITED STATES DISTRICT JUDGE